# DOUGLASS v. LEWIS.

ERROR TO THE SUPREME COURT OF THE TERRITORY OF NEW MEXICO.

No. 226. Argued April 3, 1889.—Decided May 13, 1889.

In construing a covenant in a deed, the words are to be taken most strongly against the party using them; but, in construing a covenant created by statute out of language of grant in a deed, and in derogation of the common law, the words should be construed strictly.

Covenants of seisin and for quiet enjoyment, created by statute from the use of certain words in a deed, are operative to their full extent only when the parties have failed to insert covenants in these respects in the deed, and may be controlled and limited in their operation by express covenants in that regard.

When a general covenant of warranty is inserted in a deed, a statutory covenant of seisin is not to be implied.

THE case, as stated by the court in its opinion, was as follows:

Douglass brought his action in the District Court of the Second Judicial District of the Territory of New Mexico, September 11, 1883, for the breach of an alleged covenant of seisin in a deed made by Lewis and his wife to him, purporting to convey the title to one hundred and sixty acres of land.

The petition averred that the defendants, by their deed of May 13, 1882, "did convey and warrant to the plaintiff, his heirs and assigns, in fee simple, certain real estate," describing it, and then continued, "and the defendants did by their said deed, for themselves, their heirs and personal representatives, covenant with the plaintiff, his heirs and assigns, amongst other things, that at the time of the making, ensealing and delivery of said deed, and 'at the time of the execution of said conveyance,' they, the said defendants, were lawfully seized of an indefeasible estate, and in possession of a title in fee simple in and to the said property, and then had good right and full power to convey the same. Nevertheless, plaintiff avers that the said tract of land in said deed described, and by said defendants bargained and sold to said plaintiff, was not the property of said defendants, and at the time of the making and delivery of said deed they, the said defendants, were not lawfully seized of an indefeasible estate in fee simple in and to said real estate, nor had they then good right and full power to convey the same, but, on the contrary thereof, the government of the United States had at the time of the making and delivery of said deed, and still has, lawful right and title to said real estate; and plaintiff avers that in consideration of the conveyance and sale of said lands in said deed described and set forth, he paid to said defendants the sum of five thousand three hundred and thirty-three dollars and thirty-three cents ( $5333.33 ); that he, said plaintiff, has further expended and laid out large sums of money in building houses upon and improving said land, to wit, four thousand dollars ($4000); and so the plaintiff says that they, said defendants, have not kept the said covenants according to the true intent and meaning of said deed, and according to the statute in such case made and provided, but have broken the same, to the damage of plaintiff in the sum of ten thousand dollars ($10,000)."

Profert of the deed was made by the declaration, and defendants filed a demurrer, October 1, 1883, craving oyer of the condition of the said deed and covenant, which being read and heard, they insisted that the declaration and the matters

therein contained, etc., were insufficient in law. Pleas were also filed alleging that the deed was not defendants' deed; denying that the defendants covenanted with the plaintiff that they were lawfully seized; and averring that it was not true that they had not kept their covenants. Subsequently, and on the 19th day of October, an amended special demurrer to the declaration was filed, averring "that the said deed upon oyer contains no such covenant as the one alleged in the said declaration of the plaintiff — that is to say, that the said deed having some express covenants therein contained, and among which is not the covenant declared upon in the said plaintiff's declaration, to wit, no covenant of seisin, or 'that the said covenantors were at the time of making the said deed seized of an indefeasible title in fee simple' to the lands conveyed, and inasmuch as the parties have fully expressed their intention and agreements at the time of making the said deed by the express covenants therein contained, there can be none added by construction or otherwise; and, further, defendants' say the said declaration alleges no eviction, and therefore he, the said plaintiff, ought not to have and maintain his said action," etc.

This, upon argument, was overruled November 3, 1883, the district judge filing his opinion thereon January 8, 1884, which thus concludes: "In the case at bar I am of opinion that the express covenant of warranty is independent of the covenant of seisin implied by the statute, and that an action may be maintained upon the latter, and can only be met by plea and proof of good title in the grantor at the time of the execution of the deed."

On the 16th of May, 1884, the defendants filed two pleas, alleging, in the first, that at the time of making the deed the grantors were seized and possessed of the said real estate, with full power and authority to convey according to the effect of the deed; and, in the second, that at the time of making the said deed the grantors "were lawfully seized of an indefeasible estate and in possession of a title in fee simple in and to the said real property, and then had good right and full power to convey the same" according to the form and effect of said

deed.  The plaintiff demurred to the first of these pleas, the
court sustained the demurrer, and the case went to trial on
the issue made up on the second plea.  Evidence was given
on behalf of the plaintiff tending to show that the United
States had assumed ownership and control over all the land in
controversy and had disposed of a portion of the same, and
that the defendants claimed that the land had been granted
by Spain or Mexico to one Sandoval, who devised it to one of
his relatives, from whom it had descended to the grantor of
defendant Lewis, but that the claim of Sandoval had never
been presented to any tribunal or officer of the United States
for adjudication.    All the documentary evidences of title
offered on defendants' behalf, except the will of Sandoval
and papers relating thereto, bore date in 1879 or subsequent
thereto.    The oral testimony tended to show that Sandoval
and his descendants were in possession of the land for a num-
ber of years, probably from the date of the treaty of Guada-
lupe Hidalgo.

Plaintiff admitted that he was put into possession of the
land and had never been disturbed in the possession, and, in
effect, that he had never made demand for restoration of the
consideration money or what might have been expended for
improvements, nor had any demand been made on him to sur-
render the land prior to the commencement of the suit, nor
had he offered to rescind or to restore the land.    The court
refused to admit the muniments of title relied on by the de-
fendants, and charged the jury as follows: "There is no ques-
tion of fact in this case for you to pass upon.    There are only
questions of law which it is the duty of the court to pass
upon, and the entire responsibility of passing upon such ques-
tions is with the court. . The court instructs the jury that it is
their duty, under the law and the evidence in this case, to find
a verdict for the plaintiff and assess his damages at the sum
of $5333.33, being the amount of the money paid by him for
the land in question."    The jury returned a verdict accord-
ingly, and motions for a new trial and in arrest of judgment
were made by the defendants and severally overruled, and
judgment rendered on the verdict.    The case was carried by

appeal to the Supreme Court of the Territory, which court reversed the judgment of the District Court and dismissed the cause, from which judgment of the Supreme Court the pending writ of error was prosecuted. The Supreme Court of the Territory held that the effect of the introduction into the deed of an express covenant of warranty is to deny to the purchaser the benefit of the statutory covenant of seisin and said: "As there is no pretence in this case of an eviction or any claim whatever of a breach of the covenant of warranty, it follows that the action cannot be maintained, and that it was error in the court below to order a verdict for the plaintiff, and in overruling the motion in arrest of judgment."

*Mr. J. H. McGowan* (with whom was *Mr. C. W. Holcomb* on the brief) for plaintiff in error.

I. The covenant of warranty which is found written in the deed does not exclude the statutory covenants. These latter must be considered as express covenants, having the same effect as though written out in full in the instrument of conveyance. *Alexander* v. *Schreiber*, 10 Missouri, 460; *Browning* v. *Wright*, 10 Bos. & Pull. 13; *Howell* v. *Richards*, 11 East, 633; *Bender* v. *Fromberger*, 4 Dall. 436; *Funk* v. *Bechtoll's Executors*, 11 S. & R. 109; *Brown* v. *Tomlinson*, 2 Greene (Iowa), 525; *Hesse* v. *Stevenson*, 3 Bos. & Pull. 565; *Gainsford* v. *Griffith*, 1 Saunders, 51; *Smith* v. *Compton*, 3 B. & Ad. 189; *Roebuck* v. *Duprey*, 2 Alabama, 535; *Gates* v. *Caldwell*, 7 Mass. 68; *Carver* v. *Louthain*, 38 Indiana, 530; *Kent* v. *Cantral*, 44 Indiana, 452; *Bush* v. *Person*, 18 How. 82.

II. The statutory covenant of seisin is a general covenant, unlimited by any restrictive words found in the second statutory covenant. *Gratz* v. *Ewalt*, 2 Binney, 95; *Alexander* v. *Schreiber*, 10 Missouri, 460; *Browning* v. *Wright*, 2 Bos. & Pull. 13; *Gainsford* v. *Griffith*, 1 Saunders, 51; *Duvall* v. *Craig*, 2 Wheat. 45; *Peters* v. *Grubb*, 21 Penn. St. 455; *Rowe* v. *Heath*, 23 Texas, 614; *Sumner* v. *Williams*, 8 Mass. 162; *S. C.* 5 Am. Dec. 83.

III. The covenant of seisin is broken, if at all, as soon as it is made. Rawle on Covenants, § 205, and cases cited; *Lot* v.

*Thomas*, 1 Pennington (2 N. J. L.) 386; *King* v. *Gilson*, 32 Illinois, 348; *S. C.* 83 Am. Dec. 269.; *Fitzhugh* v. *Croghan*, 2 J. J. Marsh. 429; *S. C.* 19 Am. Dec. 139; *.Ross* v. *Turner*, 6 Arkansas, 132; *S. C.* 44 Am. Dec. 531; *Abbott* v. *Allen*, 14 Johns. 247; *Moore* v. *Merrill*, 17 N. H. 75; *S. C.* 43 Am. Dec. 593.

IV. The plaintiff is only required to declare its breach, and need aver neither eviction nor damages. *Pollard* v. *Dwight*, 4 Cranch, 421; *Mitchell* v. *Hazen*, 4 Connecticut, 495; *S. C.* 10 Am. Dec. 169; *Hamilton* v. *Wilson*, 4 Johns. 72; *S. C.* 4 Am. Dec. 253; *Lot* v. *Thomas*, *ubi supra;* *Pringle* v. *Witten's Executor*, 1 Bay, 256; *S. C.* 1 Am. Dec. 612; *Share* v. *Anderson*, 7 S. & R. 43; *S. C.* 10 Am. Dec. 421; *Fitzhugh* v. *Croghan*, 2 J. J. Marsh. 429; *Dickson* v. *Désiré's Administrator*, 23 Missouri, 151.

V. The burden of proof is on the defendant. *Swafford* v. *Whipple*, 3 Greene (Iowa), 261; *S. C.* 54 Am. Dec. 498; *Ayer* v. *Austin*, 6 Pick. 225; *Abbott* v. *Allen*, 14 Johns. 248; *Schofield* v. *Iowa Homestead Co.*, 32 Iowa, 317; *Jerald* v. *Elly*, 51 Iowa, 321; *Ingalls* v. *Eaton*, 25 Michigan, 32; *Marston* v. *Hobbs*, 2 Mass. 433; *S. C.* 3 Am. Dec. 61.

VI. The measure of damages is the purchase money and interest thereon. *Staats* v. *Ten Eyck*, 3 Caines, 111; *S. C.* 2 Am. Dec. 254; *Bender* v. *Fromberger*, 4 Dall. 436; *King* v. *Gilson*, 32 Illinois, 348; *Swafford* v. *Whipple*, *ubi supra.*

*Mr. Samuel Shellabarger* (with whom was *Mr. J. M. Wilson* on the brief) for defendants in error.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

Assuming that defendants in error failed to sustain their plea that they " were lawfully seized of an indefeasible estate, and in possession of a title in fee simple in and to the said real property, and then had good right and full power to convey the same," counsel for plaintiff in error state their position " in the following propositions: 1. The covenant of warranty which is found written in the deed does not exclude the statutory covenants; these latter must be considered as express

covenants, having the same effect as though written out in full in the instrument of conveyance. 2. The statutory covenant of seisin is a general covenant, unlimited by any restrictive words found in the second statutory covenant. 3. The covenant of seisin is broken, if at all, as soon as it is made. 4. The plaintiff is only required to declare its breach, and need neither aver eviction or damages. 5. The burden of proof is on defendant. 6. The measure of damages is the purchase money and interest."

The defendants in error by their deed entered into a general covenant of warranty, but it is claimed that in virtue of the statute they are to be held in addition to a general covenant of seisin, a limited covenant as to incumbrances, and a general covenant of further assurance.

The statute relied on is as follows:

"The words 'bargained and sold,' or words to the same effect, in all conveyances of hereditary real estate, unless restricted in express terms on the part of the person conveying the same, himself and his heirs, to the person to whom the property is conveyed, his heirs and assignees, shall be limited to the following effect: *First.* That the grantor, at the time of the execution of said conveyance, is possessed of an irrevocable possession in fee simple to the property so conveyed. *Second.* That the said real estate, at the time of the execution of said conveyance, is free from all incumbrance made or suffered to be made by the grantor, or by any person claiming the same under him. *Third.* For the greater security of the person, his heirs and assignees, to whom said real estate is conveyed by the grantor and his heirs, suits may be instituted the same as if the conditions were stipulated in the said conveyance." Compiled Laws, New Mexico, 1884, § 2750, p. 1306.

The language used is somewhat ambiguous, arising, as the Supreme Court of the Territory informs us, from the section having been originally enacted in Spanish from English and then retranslated; but we are content with the view of that court that "hereditary real estate" means real estate of inheritance, and "possessed of an irrevocable possession in fee simple" means seized of an indefeasible estate in fee simple.

At common law, in the transfer of estates of freehold by deed, a warranty was implied from the word of feoffment, *dedi*, and from no other word, and from words of bargain and sale merely no covenant was implied in any case.

In 1707, the statute of 6 Anne, c. 35 was enacted, of which the 30th section is as follows :

. " In all deeds of bargain and sale hereafter enrolled in pursuance of this act, whereby any estate of inheritance in fee simple is limited to the bargainee and his heirs, the words *grant, bargain and sell* shall amount to, and be construed and adjudged in all courts of judicature, to be express covenants to the bargainee and his heirs and assigns, from the bargainor for himself, his heirs, executors and administrators, that the bargainor, notwithstanding any act done by him, was at the time of the execution of such deed seized of the hereditaments and premises thereby granted, bargained and sold, of an indefeasible estate in fee simple, free from all incumbrances, (rents and services due to the lord of the fee only excepted,) and for quiet enjoyment thereof against the bargainor, his heirs and assigns, and all claiming under him, and also for further assurance thereof to be made by the bargainor, his heirs and assigns, and all claiming under him, unless the same shall be restrained and limited by express particular words contained in such deed ; and that the bargainee, his heirs, executors, administrators and assigns, respectively, shall and may, in any action to be brought, assign a breach or breaches thereupon, as they might do in case such covenants were expressly inserted in such bargain and sale."

And in 1715, an act was passed by the colony of Pennsylvania, entitled " An act for acknowledging and recording of deeds," of which the 6th section declared that :

" All deeds to be recorded in pursuance of this act, whereby any estate of inheritance in fee simple shall hereafter be limited to the grantee and his heirs, the words *grant, bargain, sell*, shall be adjudged an express covenant to the grantee, his heirs and assigns, to wit, that the grantor was seized of an indefeasible estate in fee simple, freed from incumbrances done or suffered from the grantor (except the rents and services due

to the lord of the fee), as also for quiet enjoyment against the grantor, his heirs and assigns, unless limited by express words contained in such deed, and that the grantee, his heirs, executors, administrators and assigns, may in any action assign breaches as if such covenants were expressly inserted."

In *Gratz* v. *Ewalt*, 2 Binney, 95, 99, the construction of this statute was carefully considered, and Tilghman, C. J., in delivering the opinion, said: "The meaning is not clearly expressed; but I take it to be a covenant . . . that the estate was indefeasible as to any act of the grantor. For if it was intended that the covenant should be that the grantor was seized of an estate absolutely indefeasible, it was improper to add the subsequent words 'freed from incumbrance done or suffered by him.' . . . The words 'seized of an indefeasible estate in fee simple' are to be considered, therefore, not as standing alone, but in connection with the words next following, 'freed from incumbrances done or suffered from the grantor.' I am the more convinced that this was the intention of the legislature, by comparing the expressions in this act with the 30th section of the statute of 6 *Anne*, c. 35, which contains a provision on the same subject, and was evidently in the eye of the persons who framed our law. The *British* statute makes use of more words, and the intention is more clearly expressed. It declares that the words *grant, bargain and sell* shall amount to a covenant that the bargainor, *notwithstanding any act done by him*, was at the time of the execution of the deed seized of an indefeasible estate in fee simple, etc. Our law seems intended to express the substance of the *British* statute in fewer words, and has fallen into a degree of obscurity, which is often the consequence of attempting brevity. I can conceive no good reason why our legislature should have wished to carry this implied warranty farther than the *British* statute did; because it has bad effects to annex to words an arbitrary meaning far more extensive than their usual import, and which must be unknown to all but professional men. It might be very well to guard against secret acts of the grantor with which none but himself and those interested in keeping the secret could be acquainted. As for

any further warranty, if it was intended by the parties, it was best to leave them to the usual manner of expressing it in plain terms."

The statute of Anne, the Pennsylvania act, and the foregoing extract from the opinion of Chief Justice Tilghman, are given by Mr. Rawle in his admirable work on Covenants for Title, (5th ed. §§ 282, 283 *et seq.*,) and he states that "the construction thus given has never been departed from in Pennsylvania; and it is said by Chancellor Kent (4 Kent Com. 474) that 'by the decision in *Gratz* v. *Ewalt* the words of the statute are divested of all dangerous tendency, and that it will equally apply to the same statutory language in other States.'"

The provision upon this subject in the statutes of Alabama, Arkansas, Illinois and Mississippi, is substantially the same as in Pennsylvania, and the same construction has been put upon it by the courts. *Stewart* v. *Anderson*, 10 Alabama, 504; *Winston* v. *Vaughan*, 22 Arkansas, 72; *Finley* v. *Steele*, 23 Illinois, 56; *Weems* v. *McCaughan*, 7 Smedes & Marsh. 427. It is contended, however, that the statute of Missouri so differs from the statute of Anne and that of Pennsylvania as to require a different construction, which has been given it in *Alexander* v. *Schreiber*, 10 Missouri, 460, and that as the statute of New Mexico was taken from that of Missouri, the construction put upon the latter should be accepted as correct.

The language of the statute of Missouri (Gen. Stat. Missouri, 1865, p. 444, § 8) is as follows:

"The words 'grant,' 'bargain' and 'sell,' in all conveyances in which any estate of inheritance in fee simple is limited, shall, unless restrained by expressed terms contained in such conveyances, be construed to be the following express covenants on the part of the grantor, for himself and his heirs, to the grantee, his heirs and assigns: First, that the grantor was, at the time of the execution of such conveyance, seized of an indefeasible estate, in fee simple, in the real estate thereby granted; second, that such real estate was, at the time of the execution of such conveyance, free from incumbrances done or suffered by the grantor, or any person claiming under him; third, for further assurances of such real estate to be made by

the grantor and his heirs to the grantee and his heirs and assigns; and may be sued upon in the same manner as if such covenants were expressly inserted in the conveyance."

And the Supreme Court of Missouri, in *Alexander* v. *Schreiber*, *ubi supra*, after citing many cases holding that where a deed contains a limited covenant that the premises are free from incumbrances, and also a general covenant of warranty, the one does not limit the other, thus proceeds: "It is apparent from these cases, to which we have briefly referred, that whilst it is conceded that a special covenant will restrain a general one, where the two are absolutely irreconcilable, yet the courts have inclined very much to let both stand. A covenant is to be construed most strongly against the covenantor, and in giving effect to the intention of the parties to an instrument of conveyance, the courts have kept this principle in view. Where the particular covenants and the general covenants are entirely independent of each other and of a different character, they will all stand. The statute enumerates the three covenants which the words 'grant, bargain and sell' are declared to imply, as distinct and independent covenants. The second may be superfluous, but it does not therefore limit the first, which is independent of and inconsistent with it."

It appears to us, however, that where the question arises not upon the covenants in a deed, but upon the construction of a statute which turns certain words of grant into express covenants, the same rule of construction does not apply. In respect to deeds, the words are to be taken most strongly against the party using them, while in respect to statutes, if in derogation of the common law, as that under consideration is, they should be construed strictly. And, so construed, the statute of New Mexico seems clearly within the conclusion reached in *Gratz* v. *Ewalt*. The covenant that the grantor is "seized of an indefeasible estate in fee simple" is a covenant for a perfect title, and to couple with it a covenant that the land is free from incumbrances, "made or suffered to be made by the grantor, or by any person claiming the same under him," is incongruous and repugnant, unless the prior covenant is held to mean "notwithstanding any act done by the grantor."

. But apart from this, as the statute invests the words "bar-gained and sold" with an effect they did not possess at common law, we think it was not intended that those words should so operate where the parties themselves have entered into covenants. In *Weems* v. *McCaughan*, 7 Smedes & Marsh. 422, 427, it is said : "The covenants raised by law from the use of particular words are only intended to be operative where the parties themselves have omitted to insert covenants. But where the party declares how far he will be bound to warrant, that is the extent of his covenant."

And the same result is reached and announced by the Supreme Court of Illinois in *Finley* v. *Steele*, 23 Illinois, 56, in which case Mr. Justice Walker, speaking for the court, says that "this statutory provision does not create this covenant against the intention of the parties;" that "the employment of any language from which it appears the parties intended that these words should not have such an effect," does away with the statutory covenant; that all statutes in derogation of the common law must be construed strictly; that if there is a doubt whether where there is a general covenant of warranty in the deed, such a case is embraced within the provisions of the statute, it should not be held as controlling the rights of the parties; that "there is scarcely a court before which this act has come for a construction, that has not characterized it as a provision of dangerous tendency, calculated to entrap the ignorant and unwary into liability which they never intended to incur;" that the rule is familiar that "the expression of one thing is the exclusion of another;" and "where the grantor inserts a covenant of general warranty, and omits all other covenants, that it must have been his intention to bind himself alone by the covenant he has inserted;" that under the statutory covenant "the breach occurs, if at all, upon the delivery of the deed, whilst under the covenant of general warranty a breach only takes place upon an eviction;" and that, "if the grantor were to write out this statutory covenant in a deed, and also insert a covenant of general warranty, it would present a very different question, as then it would by that act appear to be his inten-

tion that both covenants should be operative. In such a case the court would have to give effect to each, so far as it was not limited by the other."

These views strike us as sensible and just, and we concur with the Supreme Court of the Territory in its approval of them.

Chancellor Kent pointed out in his Commentaries the danger from importing into a deed, express covenants created by statute, "of imposition upon the ignorant and unwary, if any covenant be implied, that is not stipulated in clear and precise terms."

The covenant of warranty and that of seisin or of right to convey are not equivalent covenants. Defect of title will sustain an action upon the one, while disturbance of possession is requisite to recover upon the other. And we cannot hold that Lewis and wife, in covenanting for quiet enjoyment, intended to be bound by a covenant outside of their express agreement, which might impose a liability upon them the instant their deed was executed and delivered. Covenants of seisin and of good right to convey are broken, if at all, when the deed is delivered, and if the grantor is not well seized, or if he has not the power to convey, an action at once accrues.

But as Douglass was in possession when he commenced his action, it does not appear to be material to him whether he stands upon the covenant of general warranty in the deed or of seisin in the statute.

While the Supreme Court of Missouri has held that the covenant created by the statute may be imposed upon a grantor, notwithstanding he has warranted generally in the conveyance, yet the rule is there equally well settled, that the statutory covenant of seisin is merely a covenant for indemnity, and that nominal damages only are recoverable until the estate conveyed is defeated or real injury sustained. *Dickson* v. *Desiré's Admir.*, 23 Missouri, 151; *Collier* v. *Gamble*, 10 Missouri, 467.

In that view the grantee is protected by the general covenant of warranty substantially to the same extent as by the statutory covenant, and the conclusion is strengthened that where one is expressly inserted in the deed the other ought not to be implied.

Lewis and wife had the right to contract that their grantee should not hold possession of the property and at the same time compel them to return the purchase money, and in either aspect there could be no substantial recovery here.

The judgment of the Supreme Court of the Territory is

*Affirmed.*